ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| COMISIONADO DE SEGUROS DE PUERTO RICO<br><br>Recurrida<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurrente | KLRA202300663 | *Revisión* procedente de la Oficina del Comisionado de Seguros<br><br>Caso Núm.: I-2022-73<br><br>Sobre: Art. 27.161 (3)(4)(6) y (7) del Código de Seguros de Puerto Rico, 26 LPRA secs. 2716a (3)(4)(6) y (7) |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2024.

Comparece MAPFRE PRAICO INSURANCE COMPANY (en adelante MAPFRE y/o parte recurrente) para solicitarnos la revisión de dos (2) dictámenes emitidos por la Oficina del Comisionado de Seguros (en adelante, OCS). El primer dictamen es la *Resolución* emitida y notificada el 27 de noviembre de 2023, por la OCS.[1] Mediante este *primer* dictamen recurrido, la OCS ordenó a MAPFRE a resolver con el pago de la Reclamación interpuesta y presentar prueba de ello a la OCS. Además, impuso a MAPFRE una multa administrativa por la suma de $20,000.00 dólares por violación a los Artículos 27.161(3)(4)(6) y (17) del Código de Seguros de Puerto Rico.[2] El segundo dictamen recurrido es la *Resolución* emitida el 18 de julio de 2023, y notificada al día siguiente por la OCS.[3] Mediante este *segundo* dictamen recurrido, la OCS declaró No Ha Lugar una

---

[1] Apéndice de la parte recurrente, a las págs. 1-14.
[2] Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 27.161 (3) (4) (6) (17), 26 LPRA § 2716ª.
[3] Apéndice de la parte recurrente, a las págs. 608-613.

Número Identificador

SEN2024_____

solicitud de desestimación presentada por MAPFRE y ordenó la celebración de una vista administrativa.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida emitida el 27 de noviembre de 2023. No obstante, por la *Resolución* recurrida del 18 de julio de 2023 ser interlocutoria, nos encontramos ante un dictamen no susceptible de revisión ante este Tribunal.

**I**

El asunto ante nuestra consideración tuvo su génesis cuando el señor Edoardo Carta Garau (en adelante, señor Carta Garau y/o Asegurado) adquirió un Seguro de Viajes (en adelante, Seguro) suscrito por MAPFRE bajo la póliza número 1221228013729 (en adelante, Póliza) para un viaje a España e Italia programado junto a la señora Cándida Gerardino (en adelante, señora Gerardino) del 8 al 23 de julio de 2022.[4] Así pues, el señor Carta Garau inició su viaje, y durante su estadía en Italia, sufrió un percance de salud el cual le requirió asistencia médica y fue hospitalizado en la unidad de cuidados intensivos.

Dado a lo anterior, conforme se desprende de los autos, el 14 de julio de 2022, la señora Gerardino presentó ante MAPFRE una reclamación (en adelante, Reclamación) de cubierta, por concepto de primera asistencia médica, la cual fue autorizada por la parte recurrente y pagada directamente al proveedor que le brindó el servicio médico el 8 de agosto de 2022.[5] Días más tarde, el 12 de agosto de 2022, la señora Diana Carta Gerardino (en adelante, señora Carta Gerardino) se comunicó nuevamente a MAPFRE aduciendo que en el hospital donde se encontraba su padre estaba requiriendo una ambulancia aérea para este.[6] Conforme se

---

[4] Apéndice de la parte recurrente, a las págs. 237-246.
[5] *Id.*, a las págs. 119 y 486.
[6] *Id.*, a la pág. 122.

desprende del expediente, MAPFRE notificó a la señora Carta Gerardino que luego de revisar la documentación del caso, los gastos de atención hospitalaria y de traslado no serían cubiertos de acuerdo a las condiciones generales del Seguro porque el padecimiento del Asegurado fue considerado como uno preexistente.[7] La comunicación sobre el particular le fue notificada el 17 de agosto de 2022, mediante correo electrónico y lee de la siguiente forma:

> Hemos intentado comunicarnos con usted vía telefónica pero sin éxito, le comento que se ha revisado la documentación del caso y debido a que el padecimiento es considerado una preexistencia, los gastos de atención hospitalaria y de traslado NO serán cubiertos de acuerdo a las condiciones generales del seguro.[8]

Se desprende, además, que, inconforme, el 17 de agosto de 2022, la señora Gerardino solicitó la reconsideración de esta determinación, mediante correo electrónico.[9] En lo pertinente, expresó en su reconsideración lo siguiente:

> Esto no es una condición preexistente para mi papá. Les pido reconsideración, y a su vez una comunicación con el doctor de mi papá, quien sí tiene conocimiento de sus condiciones preexistentes.[10]

En respuesta a la solicitud de reconsideración presentada, se denegó la misma, mediante correo electrónico del 18 de agosto de 2022.[11] De la determinación se desprende lo siguiente:

> Luego de discutir la solicitud de reconsideración de la Sra. Diana Carta (hija del asegurado) con la Gerencia, se determinó mantener posición a la determinación informada por ustedes durante el día de ayer.[12]

Así las cosas, el 6 de septiembre de 2022,[13] la señora Carta Gerardino suscribió una *Solicitud de Investigación* y, al día siguiente, el 7 de septiembre de 2022,[14] la notificó a la OCS. Su solicitud de

---

[7] *Id.*, a la pág. 145.
[8] *Id.*, a la pág. 145.
[9] *Id.*, a la pág. 146.
[10] *Id.*, a la pág. 146.
[11] *Id.*, a la pág. 152.
[12] *Id.,* a las págs. 152 y 230-231.
[13] *Id.*, a las págs. 312-314.
[14] *Id.*, a la pág. 309.

investigación fue con el propósito de que se determinara si MAPFRE había actuado de manera incorrecta tras su determinación de denegar el pago de la Reclamación interpuesta por concepto de hospitalización y el traslado aéreo del Asegurado, por alegada condición preexistente.[15]

De ahí, la OCS comenzó su proceso de investigación y el 9 de septiembre de 2022, notificó a MAPFRE un *Requerimiento de Información* al amparo del Artículo 2.030 (12) del Código de Seguros.[16] Por su parte, el 15 de septiembre de 2022, la OCS notificó a MAPFRE otro *Requerimiento de Información*.[17] Los correspondientes requerimientos fueron contestados mediante correo electrónico el 14 y el 22 de septiembre de 2022, respectivamente.[18] Como parte de lo investigado por la OCS, el 21 de septiembre de 2023, notificó un correo electrónico al doctor Gerardo Alayón Anta (en adelante, doctor Alayón Anta), cardiólogo del Asegurado.[19] En respuesta, mediante comunicado del doctor Alayón Anta, este indicó que en su opinión el evento que afectó al Asegurado (rotura del músculo papilar y sus subsiguientes complicaciones) no era producto de una condición preexistente.[20]

De lo que sigue, el 11 de octubre de 2022, el Comisionado de Seguros (en adelante, Comisionado) emitió una *Orden* mediante la cual ordenó a MAPFRE a resolver con el pago de la Reclamación y presentar prueba de ello a la OCS en veinte (20) días e impuso a MAPFRE el pago de una multa administrativa de $20,000.00 dólares por violación a los Artículos 27.161(3)(4)(6) y (17) del Código de Seguros de Puerto Rico.[21] En dicha *Orden*, determinó que MAPFRE

---

[15] *Id.*, a las págs. 309-314.
[16] *Id.*, a las págs. 378-380. Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 2.030 (12), 26 LPRA § 235.
[17] Apéndice de la parte recurrente, a las págs. 449-450.
[18] *Id.*, a las págs. 381 y 458.
[19] *Id.*, a las págs. 598-601.
[20] *Id.*, a la pág. 597.
[21] *Id.*, a las págs. 673-679. Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 27.161 (3) (4) (6) (17), 26 LPRA § 2716ª.

basó su determinación de denegar la Reclamación sin evaluar el historial médico del Asegurado.

Inconforme, el 1 de noviembre de 2022, MAPFRE presentó una *Moción Solicitando la Desestimación y Archivo de Orden y Solicitud de Vista a Tenor con el Artículo 2.190 del Código de Seguros*.[22] Alegaron que la Orden emitida por el Comisionado fue realizada sin autoridad para ello, por lo que debía ser desestimada. Abundaron que el rol de la OCS se limita a procesar la notificación de un asegurado y advertirle sobre su derecho a entablar una acción judicial si lo desea. Esbozaron que, para poder preparar su defensa, era necesario saber cuáles de sus acciones u omisiones violaban cada inciso del artículo del Código de Seguros. En lo que respecta a la multa administrativa, adujeron que era arbitraria y caprichosa, ya que existía prueba en el récord que refutaba las alegadas violaciones. Añadieron que, la multa no les fue notificada ni se les ofreció oportunidad para objetarla en violación a la reglamentación vigente. En ella, solicitó, en síntesis, que se desestimara y archivara la *Orden* instruyendo al pago de la Reclamación, así como multa impuesta mediante o en la alternativa, ordenara la celebración de una vista ante un adjudicador independiente y ajeno a la agencia. Además, solicitó que se permitiera llevar a cabo un descubrimiento de prueba.

En respuesta, el 17 de enero de 2023, el Oficial Examinador de la OCS (en adelante, Oficial Examinador) emitió una *Resolución Interlocutoria* mediante la cual concedió término a la OCS para expresarse en torno al escrito presentado por MAPFRE, así como que dejó en suspenso la solicitud de vista hasta tanto se atendiera la solicitud de desestimación.[23] Expresó que la vista se señalaría de ser necesaria.

---

[22] Apéndice de la parte recurrente, a las págs. 627-647.
[23] *Id.*, a las págs. 625-626.

Por su parte, el 17 de febrero de 2023, la OCS presentó su *Oposición a Solicitud de Desestimación.*[24] En su escrito, solicitó que se denegara la solicitud de desestimación presentada por MAPFRE. Adujo que las conclusiones a las que llegó el Comisionado en la *Orden* impugnada se sostenían y eran causa para las sanciones impuestas. Expresó, además, que, las imputaciones de la *Orden* impugnada se fundamentaron en hechos que surgieron del expediente de investigación, que a su vez fueron consignados en la referida *Orden.*[25]

De ahí, el Oficial Examinador evaluó el expediente administrativo y presentó un *Informe del Oficial Examinador* en atención a la solicitud de desestimación presentada por MAPFRE.[26] Allí, recomendó que se denegara la moción de desestimación presentada por MAPFRE, así como que se señalara una vista administrativa. En respuesta, el 18 de julio de 2023, notificada al día siguiente, el Comisionado emitió una *Resolución* mediante la cual declaró No Ha Lugar la solicitud de desestimación presentada por MAPFRE y ordenó al foro de adjudicación a señalar una vista administrativa.[27] Subsiguientemente, el 21 de julio de 2023, el Oficial Examinador emitió una *Resolución Interlocutoria* mediante la cual señaló una vista administrativa para el 15 de agosto de 2023, y ordenó a las partes a presentar un informe conjunto.

Luego, el 28 de julio de 2023, MAPFRE presentó una *Moción Solicitando se Deje Sin Efecto Señalamiento y se Autorice el Descubrimiento de Prueba* al amparo de la Sección 3.8 (a) de la Ley de Procedimiento Administrativo Uniforme.[28] En respuesta,

---

[24] *Id.,* a las págs. 614-624.

[25] Véase Expediente Administrativo Certificado de la OCS.

[26] *Id.*

[27] Apéndice de la parte recurrente, a las págs. 608-613. Sobre este dictamen MAPFRE compareció a esta Curia en el recurso KLRA202300438, el cual fue desestimado, mediante *Sentencia* emitida el 30 de octubre de 2023, por falta de jurisdicción, tras determinar que la *Orden* recurrida era una de naturaleza interlocutoria, no susceptible de revisión.

[28] Véase Expediente Administrativo Certificado de la OCS. Apéndice de la parte recurrente, a las págs. 604-605. Ley de Procedimiento Administrativo Uniforme

mediante *Resolución Interlocutoria* emitida el 3 de agosto de 2023, el Oficial Examinador: (i) concedió término para el descubrimiento de prueba; (ii) dejó sin efecto la presentación del informe conjunto; y, (iii) convirtió la vista administrativa en una sobre el estado de los procedimientos.[29]

Así las cosas, el 7 de agosto de 2023, la OCS presentó una *Solicitud de Resolución Sumaria.*[30] Adujo que el caso del título resultaba propicio para ser resuelto prescindiendo de una vista administrativa, arguyendo que no existían controversias de hecho y que lo que procedía era aplicar el derecho. Expuso que MAPFRE denegó la Reclamación sin haber llevado a cabo una investigación razonable y sin evaluar el historial médico del señor Carta Garau previo a denegarla. Por lo anterior, solicitó al foro adjudicador de la OCS, que resolviera el caso de forma sumaria y confirmara la *Orden* emitida el 11 de octubre de 2022, notificada al día siguiente, en la cual se ordenó el pago de la Reclamación y la multa impuesta a MAPFRE por violación al Código de Seguros. Posteriormente, la OCS presentó una *Moción Informativa* para incluir unos folios que debieron formar parte del apéndice de la *Solicitud de Resolución Sumaria.*[31]

Por su parte, el 8 de agosto de 2023, MAPFRE presentó su *Oposición a Solicitud de Resolución Sumaria y Solicitud de Término para Presentar Memorando en Apoyo.*[32] En su escrito, expuso que se oponía a la resolución sumaria del caso, así como que solicitó veinte (20) días para presentar un memorando de derecho en apoyo a su oposición.

---

del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, Secc. 3.8 (a), 3 LPRA § 9648.

[29] Apéndice de la parte recurrente, a las págs. 602-603.

[30] *Id.,* a las págs. 341-358.

[31] Véase Expediente Administrativo Certificado de la OCS.

[32] *Id.*

De ahí, el Oficial Examinador de la OCS emitió una *Resolución Interlocutoria* el 14 de agosto de 2023.[33] En ella, dejó sin efecto la vista pautada para el 15 de agosto de 2023 y concedió término a la OCS, para cumplir con un descubrimiento de prueba que le fue cursado, así como un término a MAPFRE para expresarse en torno a la *Solicitud de Resolución Sumaria* presentada por la OCS.

Así las cosas, el 14 de septiembre de 2023, MAPFRE presentó un *Memorando en Oposición a Solicitud de Resolución Sumaria y en Solicitud de Desestimación por Ausencia de Prueba y como Cuestión de Derecho*.[34] Adujo, en síntesis, que (i) la *Orden* emitida el 11 de octubre de 2022, notificada al día siguiente debía ser desestimada; y que (ii) la OCS carecía de facultad para sancionar a MAPFRE y determinar las violaciones impugnadas, arguyendo que no tiene autoridad para realizar una investigación y ajuste como parte de una reclamación de seguros. Lo anterior, aduciendo que la actuación de la OCS fue realizada sin facultad bajo los poderes delegados al Comisionado. Además, expuso que, de no desestimarse la *Orden*, procedía la celebración de una vista tras considerar que existían controversias de hechos.

De lo que sigue, el 16 de noviembre de 2023, el Oficial Examinador de la OCS rindió el *Informe del Oficial Examinador* (Informe).[35] En relación a la procedencia o no de resolver el caso del título por la vía sumaria expuso que:

> [S]e desprende que no existe controversia real sustancial sobre los hechos esenciales y materiales, por lo que estamos en posición de resolver conforme a derecho y emitir resolución sumaria a esos efectos.[36]

En virtud de lo anterior consignó diecisiete (17) hechos que estimó no estaban controvertidos.[37] Además, producto de las

---

[33] Apéndice de la parte recurrente, a la pág. 327.
[34] *Id.*, a las págs. 15-38.
[35] Véase Expediente Administrativo Certificado de la OCS.
[36] *Id.*
[37] Apéndice de la parte recurrente, a las págs. 4-6.

determinaciones de hechos incontrovertidos, así como de las conclusiones de derecho incluidas en su Informe, recomendó que se confirmara la *Orden* emitida el 11 de octubre de 2023, y en consecuencia: (i) se ordenara a MAPFRE a resolver con el pago de la Reclamación y presentar prueba de lo anterior a la OCS en veinte (20) días; e (ii) se impusiera a MAPFRE una multa administrativa por la suma de $20,000.00 dólares por violación a los Artículos 27.161(3)(4)(6) y (17) del Código de Seguros de Puerto Rico.[38]

De ahí el 27 de noviembre de 2023, el Comisionado emitió y notificó la *Resolución* recurrida.[39] Como cuestión de umbral, el Comisionado concluyó que el caso del título era susceptible de ser resuelto por la vía sumaria, tras juzgar que no existía controversia sustancial sobre los hechos esenciales y materiales.[40] Luego, el Comisionado consignó diecisiete (17) determinaciones de hechos incontrovertidos, así como sus conclusiones de derecho. En la *Resolución*, acogió la recomendación del Oficial Examinador, por lo que ordenó a MAPFRE a resolver con el pago de la Reclamación y presentar prueba de ello a la OCS en veinte (20) días, así como que le impuso una multa administrativa de $20,000.00 dólares por violación a los Artículos 27.161(3)(4)(6) y (17) del Código de Seguros de Puerto Rico.[41]

En desacuerdo, el 27 de diciembre de 2023, MAPFRE presentó un recurso de revisión de la determinación emitida por la OCS y elaboró la comisión de los siguientes tres (3) errores:

> PRIMER ERROR: ERRÓ LA OCS AL RESOLVER SUMARIAMENTE QUE EL ASEGURADOR INCURRIÓ EN VIOLACIÓN AL ARTÍCULO 27.161(3)(4)(6) Y (17) DEL CÓDIGO DE SEGUROS DE PUERTO RICO

---

[38] Véase Expediente Administrativo Certificado de la OCS. Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 27.161 (3) (4) (6) (17), 26 LPRA § 2716ª.
[39] Véase Expediente Administrativo Certificado de la OCS. Apéndice de la parte recurrente, a las págs. 1-14.
[40] Véase Expediente Administrativo Certificado de la OCS. *Id.*
[41] Véase Expediente Administrativo Certificado de la OCS. Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 27.161 (3) (4) (6) (17), 26 LPRA § 2716ª.

CUANDO DE LOS AUTOS SURGE QUE EXISTE CONTROVERSIA SOBRE HECHOS MATERIALES, Y AL IMPONERLE AL ASEGURADOR UNA MULTA ADMINISTRATIVA DE $20,000.00 POR LA VIOLACIÓN A DICHO ARTÍCULO.

SEGUNDO ERROR: ERRÓ EL COMISIONADO AL RESOLVER MEDIANTE RESOLUCIÓN SUMARIA UN ASUNTO INHERENTEMENTE PERICIAL QUE POR SU NATURALEZA REQUIERE LA CELEBRACIÓN DE UNA VISTA CONFORME A LA NORMATIVA JUDICIAL.

TERCER ERROR: ERRÓ LA OCS AL ORDENAR A UN ASEGURADOR A REABRIR UNA RECLAMACIÓN CERRADA, SIN AUTORIZACIÓN LEGAL PARA REALIZAR SU PROPIA INVESTIGACIÓN EX PARTE, RESOLVER LA RECLAMACIÓN ORDENANDO UNA INDEMNIZACIÓN Y DISPONIENDO DE UNA CONTROVERSIA DE CUBIERTA ENTRE PARTES PRIVADAS SOBRE LA CUAL NO TIENE JURISDICCIÓN ADJUDICATIVA, LA CUAL ESTÁ RESERVADA A LOS TRIBUNALES. EN LA ALTERNATIVA DE SOSTENERSE LA ORDEN Y DE MANERA SUMARIA, NO SE CONFIGURAN LAS VIOLACIONES IMPUTADAS Y[,] POR TANTO, NO PROCEDEN LAS SANCIONES NI ORDEN A ADJUDICAR UNA RECLAMACIÓN DE SEGUROS PARA PAGO.

Por su parte, el 18 de enero de 2024, la OCS presentó copia certificada del expediente administrativo Caso Núm.: I-2022-73, Investigación Núm.: I-VII-E-25809-2022. Por su parte, el 12 de febrero de 2024, compareció la OCS por conducto de la Oficina del Procurador General mediante un *Escrito en Cumplimiento de Orden*. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

**II**

### A. Revisión Administrativa

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha sostenido que, el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[42] El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre

---

[42] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).

Asociado de Puerto Rico[43] **otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas**.[44] (Énfasis suplido). La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[45] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[46] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho.[47]

El Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[48]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que **los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados**.[49]

---

[43] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[44] *Asoc. Condómines v. Meadows Dev.*, *supra.*
[45] *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011). *Empresas Ferré v. ARPe*, 172 DPR 254, 264 (2007).
[46] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).
[47] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). *Mun. de San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[48] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24 (1996).
[49] *Rolón Martínez v. Caldero López*, supra. *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra.

(Énfasis suplido). Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[50] Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[51] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[52] Ahora bien, **esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) la actuación administrativa lesiona derechos constitucionales fundamentales**.[53] (Énfasis suplido).

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[54] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[55] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la

---

[50] *Id.*

[51] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[52] *Id.*

[53] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012).

[54] *Batista, Nobre v. Jta. Directores, supra*, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011). *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

[55] *Id. Otero v. Toyota*, 163 DPR 716, 728 (2005).

agencia le haya conferido.[56] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[57] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[58]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[59] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[60] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[61] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[62] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[63] Así pues, si el punto de derecho no

---

[56] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[57] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[58] *OCS v. Triple-S*, 191 DPR 536, 554 (2014). Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[59] *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[60] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).
[61] *Otero v. Toyota, supra.*
[62] *García Reyes v. Cruz Auto Corp., supra,* 894.
[63] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).

conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[64]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[65] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[66]

### B. Resoluciones Sumarias

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (por sus siglas, LPAU) establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adjudicar un caso.[67] Bajo la LPAU, una resolución es cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas.[68] A tales efectos, en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: (i) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (ii) derecho a presentar evidencia; (iii) derecho a una adjudicación imparcial; y, (iv) derecho a que la decisión sea basada en el expediente.[69]

Ahora bien, en lo que respecta a las resoluciones sumarias, la LPAU dispone que:

---

[64] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[65] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007). *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[66] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[67] Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, Exposición de Motivos, 3 LPRA § 9601 *et seq.*
[68] *Id.*, Secc. 1.3 (g), 3 LPRA § 9603.
[69] *Id.*, Secc. 3.1, 3 LPRA § 9641.

(a) Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.

(b) **Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar** órdenes o **resoluciones sumarias, ya sean de carácter final**, o parcial **resolviendo cualquier controversia entre las partes**, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.[70] (Énfasis suplido).

Por su parte, el Código de Seguros de Puerto Rico en lo concerniente a las vistas dispone que:

(1) Las vistas administrativas de adjudicación se celebrarán cuando sean:
(a) Requeridas por disposición de este Código o alguna otra ley.
(b) Consideradas necesarias por el Comisionado para fines dentro del alcance de este Código.
(c) Solicitadas por cualquier persona perjudicada por un acto, informe, promulgación, reglamento u orden del Comisionado.
No será necesaria la celebración de una vista administrativa de adjudicación cuando el Comisionado determine, a solicitud de alguna de las partes, dictar una resolución sumaria conforme se establece en el Artículo 2.220.[71]
[...]

A la luz de lo anterior, el Código de Seguros esboza que:

(1) Una orden o resolución final será emitida por el Comisionado, luego de concluido el procedimiento de adjudicación. El Comisionado, o cualquier otro funcionario a quien éste delegue, firmará la orden o

---

[70] *Id.*, Secc. 3.7, 3 LPRA § 9647.
[71] Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 2.190 (1), 26 LPRA § 251.

resolución, la cual incluirá y expondrá separadamente las determinaciones de hecho, si no se han renunciado, y las conclusiones de derecho. La orden o resolución advertirá el derecho de solicitar la reconsideración ante la Oficina del Comisionado o de instar el recurso de revisión ante el Tribunal de Apelaciones con expresión de los términos correspondientes. La notificación y el archivo en autos de la orden o resolución se hará de acuerdo a lo dispuesto en la "Ley de Procedimiento Administrativo Uniforme".

(2) El Comisionado podrá emitir una resolución sumaria que disponga parcial o totalmente de las controversias, siempre y cuando determine, a la luz de los documentos ante su consideración, que no existe controversia real sobre los hechos materiales y que únicamente restan por adjudicarse controversias de derecho. En caso de que la resolución dictada sumariamente disponga de la totalidad de las controversias ante la consideración del Comisionado, no será necesaria la celebración de una vista. Cualquier parte afectada por la resolución así dictada será debidamente notificada de ésta y podrá ejercer su derecho a la revisión judicial conforme lo dispone la "Ley de Procedimiento Administrativo Uniforme".[72]

## C. Código de Seguros de Puerto Rico

### a. Carta de Derechos del Consumidor de Seguros

El Código de Seguros dispone que el Consumidor de Seguros disfrutará de todos los derechos que le son reconocidos en las leyes y reglamentos que les sean aplicables, incluyendo, pero sin limitarse a los siguientes:

[…]
(e) Derecho a que quien le gestiona su póliza le provea una orientación clara y completa sobre la cubierta, beneficios, límites y exclusiones de la póliza, así como los deberes y obligaciones del asegurado.
[…]
(i) Derecho a que el asegurador actúe de buena fe, de forma justa y equitativa al evaluar y resolver su reclamación.
[…]
(k) Derecho a que el asegurador le incluya en el ajuste, las razones por las cuales ciertas partidas de la reclamación fueron declinadas.
[…]
(n) Derecho a que su reclamación se resuelva en un período razonable dentro de los primeros noventa (90) días de haberse recibido la reclamación.
(o) Derecho a solicitar una reconsideración a la determinación del asegurador respecto a su reclamación, y que la misma sea atendida y resuelta dentro del término de treinta (30) días de presentada la solicitud.

---

[72] *Id.*, Art. 2.220, 26 LPRA § 254.

(p) Derecho a radicar una solicitud de investigación ante el Comisionado de Seguros.[73]
[...]

### b. Comisionado

En lo aquí pertinente, entre los poderes y facultades del Comisionado se encuentran:

[...]
(3) El Comisionado podrá interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de este Código o cualquier ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por el Secretario de Justicia o, previa autorización de éste, por sus propios abogados. Además, el Comisionado podrá designar a un funcionario de la Oficina para que le brinde apoyo y asesoramiento al fiscal del Departamento de Justicia que tenga la encomienda de instar un procedimiento criminal por violación a las leyes, reglamentos u órdenes bajo la administración de la Oficina.
[...]
(12) El Comisionado podrá llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su Reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de éstas. Para ello utilizará aquellos mecanismos que estime necesarios. La investigación o examen podrá extenderse a cualquier persona o entidad que tenga o haya tenido negocios de seguros y a aquellas entidades comerciales o empresas que tengan relación comercial con éstas. El alcance de la investigación o examen podrá extenderse fuera de la jurisdicción de Puerto Rico.
[...]
(17) El Comisionado tendrá la facultad de imponer sanciones y penalidades administrativas por violaciones a este Código y a los reglamentos aprobados en virtud de éste y dictar cualquier remedio pertinente autorizado en el Código.[74]

### c. Multas

En lo que respecta a las penalidades, la ley dispone que aquellas violaciones a las disposiciones de este Código y de las reglas o reglamentos promulgados que no tuvieren penalidad prescrita en este Código, estarán sujetas a una multa administrativa no menor de quinientos ($500.00) ni mayor de diez mil ($10,000.00) dólares

---

[73]*Id.*, Art. 1.120 (e)(i)(k)(n)(o)(p), 26 LPRA § 118.
[74] *Id.*, Art. 2.030 (3) (12) (17), 26 LPRA § 235.

por cada violación.[75] Además, en adición a la denegación, revocación o suspensión de la autorización de un asegurador para concertar seguro según dispuesto en el Artículo 3.120 del Código, o en lugar de la misma, a cualquier asegurador que violare una disposición de este Código podrá imponérsele una multa administrativa que no excederá de cinco mil dólares ($5,000.00) por cada violación.[76] No obstante, disponiéndose, que el total de multas por diferentes violaciones no excederá de cincuenta mil dólares ($50,000.00).[77]

### d. Prácticas Desleales y Fraudes

El Capítulo 27 del Código de Seguros tiene como propósito regular las prácticas comerciales en el negocio de seguros, definiendo o disponiendo para la determinación de todas las prácticas en Puerto Rico que constituyen métodos desleales de competencia, o actos o prácticas engañosas, y prohibiendo las prácticas comerciales que así se definan o determinen.[78] Dicho Capítulo menciona una serie de prácticas desleales en el ajuste de reclamaciones, entre las que se encuentran:

> [...]
> (3) Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.
> (4) Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.
> [...]
> (6) No intentar de buena fe de llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.
> [...]
> (17) Negar el pago de una reclamación bajo el pretexto de información insuficiente cuando ésta era capaz de ser obtenida bajo métodos ordinarios de investigación.[79]
> [...]

Así, las cosas, existe un término para la resolución de reclamaciones. El Artículo 27.162 dispone que:

---

[75] *Id.*, Art. 2.250, 26 LPRA § 257.
[76] *Id.*, Art. 3.211, 26 LPRA § 321a.
[77] *Id.*
[78] *Id.*, Art. 27.010, 26 LPRA § 2701.
[79] *Id.*, Art. 27.161 (3)(4)(6)(17), 26 LPRA § 2716a.

(1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.

(2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de este Artículo, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.

(3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.[80]

A la hora de resolver una reclamación existen varios métodos:

(1) El pago total de la reclamación.

(2) La denegación escrita y debidamente fundamentada de la reclamación.

(3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación.

Disponiéndose que el asegurador notificará inmediatamente al reclamante del cierre de la misma, salvo que en tales circunstancias el cierre será sin perjuicio de permitir nuevamente la presentación de dicha reclamación.[81]

### III

En el recurso de revisión ante nos, MAPFRE esbozó que la OCS cometió tres (3) errores, y por ello, las resoluciones recurridas debían ser revocadas. En el recurso, MAPFRE planteó que la OCS incidió al determinar resolver la controversia de forma sumaria aduciendo que existe controversia sobre hechos materiales y que el asunto ante su consideración era inherentemente pericial, por lo que era necesaria la celebración de una vista. También, alegó que, la OCS cometió el error de ordenar la indemnización al Asegurado, así como la imposición de una multa de $20,000.00 dólares. Además, expuso que la OCS erró al presuntamente reabrir una Reclamación cerrada por MAPFRE, sin autoridad legal para ello, haciendo, además, una presunta investigación ex parte, todo lo

---

[80] *Id.*, Art. 27.162, 26 LPRA § 2716b.
[81] *Id.*, Art. 27.163, 26 LPRA § 2716c.

anterior, sin jurisdicción, aduciendo que la autoridad la tienen los tribunales. Tras considerar que los errores esgrimidos pueden ser discutidos de manera conjunta, obraremos como tal.

Antes de iniciar la discusión de los errores esbozados por MAPFRE, es menester reiterar que la parte recurrente nos solicita la revisión de dos (2) resoluciones emitidas por la OCS. Una de las resoluciones en cuestión fue emitida el 18 de julio de 2023, y notificada al día siguiente. En dicha *Resolución* el Comisionado declaró No Ha Lugar la solicitud de desestimación presentada por MAPFRE y ordenó al foro de adjudicación a señalar una vista administrativa. Sin embargo, acentuamos que, en el precitado alfanumérico KLRA202300438, MAPFRE acudió ante esta Curia y solicitó que revisáramos la *Resolución* antes mencionada. En dicho caso, este Panel determinó que, dado que la *Resolución* recurrida no disponía de la totalidad de la controversia ante la agencia, nos encontrábamos ante un dictamen interlocutorio, no susceptible de revisión ante este Tribunal. Es importante recordar que, el artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[82] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[83]

Por otro lado, puntualizamos que, la OCS es la entidad encargada de reglamentar todos los asuntos relacionados al negocio de los seguros en Puerto Rico. Una de las áreas más reguladas del Código de Seguros es el Capítulo 27 referente a las prácticas desleales y fraude en el ajuste de reclamaciones en la industria de los seguros.[84]

---

[82] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).
[83] *Asoc. Condómines v. Meadows Dev., supra.*
[84] *Carpets & Rugs v. Tropical Reps,* 175 DPR 615, 632 (2009).

Con la intención de proveer un trasfondo, de las determinaciones de hechos consignadas por el Comisionado nos parece relevante destacar las siguientes:

[...]

4. El 14 de julio de 2022, se presentó la reclamación número 1228030, en adelante denominada "la Reclamación", bajo la Póliza ya que el Asegurado durante su viaje, enfermó y requirió asistencia médica por lo que tuvo que ser hospitalizado en Siena, Italia.

[...]

7. El 17 de agosto de 2022, el Asegurador, mediante correo electrónico denegó la Reclamación y le notificó a la Solicitante lo siguiente:

"que debido a que el padecimiento es considerado una preexistencia, los gastos de atención hospitalaria y de traslado NO serán cubiertos de acuerdo a las condiciones generales del seguro".

8. Ese mismo día, la Solicitante peticionó al Asegurador que reconsiderara su posición de denegar la Reclamación y solicitó la reevaluación de su solicitud.

9. En respuesta a la solicitud de reconsideración, el Asegurador le envió un correo electrónico a la Solicitante y le indicó lo siguiente:

"...Debido que el Asegurado se encuentra en un hospital público el cual está fuera de la red de nuestro proveedor se nos imposibilita obtener el reporte médico el cual es fundamental para la evaluación".

10. El 13 de septiembre de 2022, el Asegurador sostuvo su posición de denegar la Reclamación basándose en la condición preexistente del Asegurado. En su comunicación, el Asegurador no indicó en qué consiste la preexistencia en la que apoya su denegatoria o a qué se debe.

[...]

12. De Expediente surge lo siguiente:

a. No hay copia del expediente y/o historial médico.

b. Copia del reporte que realizó el Hospital Azienda Ospedaliera Universitaria Senese, de Italia, en adelante denominado "el Reporte".

c. Que el Asegurador basó la determinación de denegar la Reclamación por condición preexistente basado en el Reporte.

d. No surge comunicación alguna con los médicos que trataban las condiciones del Asegurado en Puerto Rico ni evaluación de sus expedientes médicos de sus condiciones tratadas en Puerto Rico.

[...]

Ahora bien, este tribunal revisor tiene la tarea de determinar en primer lugar si la OCS incidió al dictaminar que en el presente caso procedía dictar una *Resolución Sumaria*, condenando a MAPFRE a resolver la Reclamación. Cónsono a lo anterior, y ante el cuestionamiento de MAPFRE, debemos expresarnos en torno a la

autoridad que tiene la OCS para haber atendido este asunto. Como hemos mencionado, el Comisionado de Seguros tiene varios poderes y facultades que emanan del Artículo 2.030 del Código de Seguros, particularmente los incisos 3, 12 y 17.[85] Al analizar dichos poderes y facultades es menester concluir que el Comisionado está facultado para dictar los remedios que sean necesarios para velar que se cumplan las disposiciones del Código de Seguros; entiéndase, puede ordenar el pago de una Reclamación e iniciar el trámite adjudicativo. De igual forma, el Comisionado posee los poderes investigativos pertinentes para cumplir con su deber de fiscalizar y reglamentar la industria. Ello, no obstante, salvaguardados quedan los derechos de la parte afectada por una decisión del Comisionado al proveerse la disponibilidad del recurso de revisión judicial conforme al Capítulo IV de la LPAU.

En el recurso, MAPFRE planteó que la OCS incidió al determinar resolver la controversia de forma sumaria aduciendo que existe controversia sobre hechos materiales y que el asunto ante su consideración era inherentemente pericial, por lo que era necesaria la celebración de una vista. Así, pues, la parte recurrente nos solicita se revoque la *Resolución* recurrida y, en consecuencia, se ordene la celebración de una vista administrativa. No le asiste la razón. Veamos.

Nótese, que fue ante una solicitud de desestimación presentada por MAPFRE y su subsiguiente oposición que se emitió una *Resolución* mediante la cual se denegó la misma y se ordenó la celebración de una vista administrativa.

Empero, del expediente ante nuestra consideración se desprende que posterior a dicho dictamen, la OCS presentó una solicitud para que se resolviera el caso de forma sumaria a lo que

---

[85] Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, Art. 2.030 (3)(12)(17), 26 LPRA § 235.

MAPFRE respondió primeramente con una solicitud de término adicional y, en respuesta, se le extendió al mismo, pero también se dejó sin efecto la vista que había sido pautada a esos fines. Luego, MAPFRE presentó su oposición a la solicitud de sentencia sumaria y reiteró su solicitud de desestimación. De ahí, contando con las posiciones de las partes, el Comisionado determinó emitir la *resolución sumaria* recurrida.

Es de ver que, es correcto que la cubierta del Asegurado no cubría condiciones preexistentes. Sin embargo, precisa señalar que la cubierta de la póliza no dispone para enfermedades que tengan relación con una condición preexistente. Los términos de la póliza son claros, por lo que cualquier ambigüedad debe ser interpretada a favor del Asegurado. Un examen del expediente ante nos, demuestra que los documentos utilizados por MAPFRE para hacer una determinación sobre denegar la cubierta fueron preparados por facultativos médicos de otro país (Italia), que no eran los médicos del Asegurado. Más aun, MAPFRE falló al no indagar ni en lo mínimo con los propios facultativos médicos del Asegurado en Puerto Rico previo a tomar la decisión de denegar la cubierta. Forzoso es concluir que la investigación realizada por MAPFRE fue una deficiente e incompleta. Por otro lado, existe un término para la resolución de reclamaciones dispuesto en el Artículo 27.162: "(1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación".[86] Pasado el término antes mencionado, sin haberse realizado una investigación responsable, es claro que MAPFRE incurrió en una práctica desleal.

En el caso *Comisionado Seguros P.R. v. Integrand*, nuestro Alto Foro determinó que no es obligatorio que el Comisionado celebre

---

[86] *Id.*, Art. 27.162, 26 LPRA § 2716b.

una vista administrativa conforme al Artículo 2.220 del Código de Seguros solo porque fue solicitada por la parte perjudicada por la actuación de la OCS.[87] Por su parte, puntualizamos que, la interpretación de las disposiciones que gobiernan los procedimientos de vistas ante el Comisionado es cónsona con la naturaleza flexible, ágil, sencilla, rápida y económica de los procedimientos administrativos.[88] El Tribunal Supremo expresó que:

> El inciso (1)(c) del Artículo 2.220 regula la celebración de las vistas solicitadas por cualquier persona perjudicada por algún acto, amenaza de acto, informe, promulgación, regla, reglamento u orden del Comisionado, mientras el inciso (2) establece la forma en que se debe hacer dicha solicitud de vista. Particularmente, este último dispone que **la solicitud de vista "deberá especificar los extremos en que la persona que la solicita ha sido perjudicada y los fundamentos en que habrá de basar su solicitud"**. (Énfasis suplido).
> El requisito de fundamentar la solicitud de vista es un requisito de forma. Sin embargo, los requisitos de forma también tienen una razón de ser. No tendría ningún sentido exigir que se fundamente la solicitud de vista si los fundamentos para solicitarla son irrelevantes para su concesión. Ello equivaldría a interpretar que el legislador arbitrariamente impuso un escollo a la parte que solicita una vista. Véase E.R. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de la Leyes en Puerto Rico*, 2da. ed., San Juan, Pubs. J.T.S., 1987, Vol. 1, Cap. 44, pág. 316. [...] Es por esto que coincidimos con la posición del Procurador General en cuanto a que el hecho de que la solicitud de vista deba estar fundamentada, es indicativo de que el Comisionado tiene discreción para denegarla si considera que, a base de los fundamentos expuestos en la solicitud, no hay razón para concederla.
> [...]
> Por lo tanto, el derecho otorgado por el Artículo 2.260 de apelar una orden del Comisionado que denegó la vista indudablemente se refiere a una vista solicitada al amparo del inciso (1)(c) del Artículo 2.220.[89]

Visto lo anterior, nos corresponde por último determinar si la OCS incidió al haber impuesto una multa de $20,000.00 dólares a MAPFRE. La OCS posee la facultad para imponer multas o cualquier

---

[87] *Comisionado Seguros P.R. v. Integrand*, 173 D.P.R. 900, 910 (2008).
[88] *Id.*, 914.
[89] *Id.*, 911-912.

otra sanción que estime apropiada. En lo concerniente a la revisión de la facultad administrativa para imponer sanciones, los tribunales también le han reconocido mucha discreción a las agencias en la selección de las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y de la ley.[90] Es decir, la revisión judicial se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta; dicho de otro modo, evitar que estas actúen movidas por el capricho o en abuso de su discreción.[91] Nuestro Tribunal Supremo ha expresado que la complejidad del negocio de seguros y su efecto en la economía y en la sociedad lo han convertido en una actividad económica revestida de gran interés público, que requiere una reglamentación extensa y compleja: "Se requiere, por ende, un ente reglamentador de gran conocimiento y experiencia en el campo a quien se le reconozca su autoridad. De ahí la razón del peritaje y el amplio poder de sanciones que la Legislatura le delegó al Comisionado."[92]

Enfatizamos que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[93] Por tanto, este Tribunal no intervendrá con la deferencia reconocida a las decisiones de las agencias administrativas, a menos que: (i) la decisión no esté basada en

---

[90] *Comisionado de Seguros v. PRIA*, 168 DPR 659, 667 (2006). *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 438 (1997).

[91] *Comisionado de Seguros v. PRIA, Id.*, 668. *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 DPR 226, 234 (1998).

[92] *Comisionado de Seguros v. PRIA, Id.*, 673. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, *supra*, 446-447.

[93] *Rolón Martínez v. Caldero López, supra. Asoc. Fcias. v. Caribe Specialty et al. II.*, *supra*.

evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal; y/o, (iv) la actuación administrativa haya lesionado derechos constitucionales fundamentales.[94]

La parte recurrente no derrotó la presunción de regularidad y corrección de la que gozan las determinaciones de las agencias administrativas, en dicho caso la OCS. Además, observamos que las determinaciones de hecho del Comisionado están respaldadas por prueba sustancial en el expediente administrativo. Por consiguiente, no nos corresponde intervenir con el dictamen impugnado.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida emitida el 27 de noviembre de 2023. No obstante, por la *Resolución* recurrida del 18 de julio de 2023 ser interlocutoria, nos encontramos ante un dictamen no susceptible de revisión ante este Tribunal, cónsono a lo ya resuelto en el alfanumérico KLRA202300438.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[94] *The Sembler Co. v. Mun. de Carolina, supra.*